

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

MARIGOLD ENTERPRISES, INC.,

              Plaintiff,

    - against -

TRADHOL INTERNACIONAL S.A.,

              Defendant.

------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, MARIGOLD ENTERPRISES, INC. (hereinafter "Marigold" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, TRADHOL INTERNACIONAL S.A. (hereinafter "Tradhol" or "Defendant") alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.    At all times material to this action, Marigold was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

3.    Upon information and belief, Tradhol was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Spain.

4.    At all times material to this action, Marigold was the registered owner of the vessel "LIQUID FORTUNE" (hereinafter "the Vessel") which was operated by Elmira Shipping &

Trading, S.A. *See Standard Tanker Voyage Chartering Questionnaire 1988, attached hereto as Exhibit "1".*

5.      By a fixture recap dated November 19, 2007, (hereinafter "the fixture recap"), Marigold voyage chartered the Vessel to Tradhol for the carriage of sulfuric acid, palm oil and butyl acrylate cargo. *A copy of the fixture recap is annexed hereto as Exhibit "2".*

6.      The fixture recap provides for payment of demurrage at the rate of $11,000.00 per day. *See Exhibit "2".*

7.      Marigold delivered the Vessel into the service of Tradhol and has at all times fully performed its duties and obligations under the fixture recap.

8.      Tradhol completed its voyage charter under the fixture recap. Upon completion of the voyage, Tradhol owed Marigold outstanding demurrage in the total amount of $21,338.59. *See Invoice dated April 3, 2008, attached hereto as Exhibit "3".*

9.      Additionally, upon completion of the voyage, Tradhol owed Marigold $664.31 for berthing dues at the loadport and $770.17 for harbour berthing dues at the discharge port, for a total outstanding sum due and owing from Tradhol to Marigold of $22,773.07. *See Exhibit "3".*

10.     Marigold forwarded an invoice to Tradhol on April 3, 2008, requesting payment of outstanding demurrage and berthing dues in the amount of $22,773.07. *See Exhibit "3".*

11.     Marigold followed up on the invoice with several electronic mail messages to Tradhol requesting payment of the outstanding invoice. On April 22, 2008, Tradhol informed Marigold that the funds it had scheduled to use to pay the invoice were postponed, and that it needed a few more weeks to pay. *A copy of these electronic mail messages is annexed hereto as Exhibit "4".*

12.     To date, Tradhol has refused and/or failed to pay the outstanding demurrage and

berthing dues, despite assurances that such payment was forthcoming. *See Exhibit "4"*.

13.     Tradhol has breached the terms of the fixture recap by refusing and/or failing to pay outstanding demurrage and berthing dues due and owing to Marigold.

14.     Pursuant to the fixture recap, disputes between the parties are to be submitted to arbitration in London with English law to apply. Marigold will commence arbitration after the commencement of this action and jurisdiction is obtained over Tradhol.

15.     This action is brought in order to obtain jurisdiction over Tradhol and also to obtain security for Marigold's claims and in aid of London arbitration proceedings.

16.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

17.     As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| a. | Plaintiff's Principal Claim: | $ | 22,773.07 |
| | *Demurrage and berthing dues at loading and discharging port* | | |
| b. | Interest for 2 years, compounded quarterly at 7%: | $ | 3,390.50 |
| c. | Estimated arbitration costs: | $ | 3,000.00 |
| d. | Estimated recoverable legal fees and costs: | $ | 5,850.00 |
| **Total:** | | $ | 35,013.57 |

18.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held

in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "5".*

19. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any proeprty of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That pursuant to 9 U.S.C. §§ 201, *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $35,013.57 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D. That this Court enter Judgment against Defendant on the claims set forth herein;

E.      That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be initiated in

the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.      That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: June 9, 2008
       New York, NY

                        The Plaintiff,
                        MARIGOLD ENTERPRISES, INC.

                        By: _Anne C. LeVasseur_
                        Patrick F. Lennon
                        Anne C. LeVasseur
                        LENNON, MURPHY & LENNON, LLC
                        420 Lexington Ave., Suite 300
                        New York, NY 10170
                        (212) 490-6050 – phone
                        (212) 490-6070 – fax
                        pfl@lenmur.com
                        acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                )    ss.:    Town of Southport.
County of Fairfield )

1.      My name is Anne C. LeVasseur.

2.      I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

5.      The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.      The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      Southport, CT
            June 9, 2008

_Anne C. LeVasseur_
Anne C. LeVasseur

6

EXHIBIT 1

QUESTIONNAIRE 88 (Version 2)

INTERTANKO'S STANDARD TANKER VOYAGE CHARTERING QUESTIONNAIRE 1988
(Version 2)

*(Metric system to be applied, HVPQ reference specified where applicable)*

| GENERAL INFORMATION | |
|---|---|
| Date Updated: | 11-01-2007 |
| Vessel's name: | LIQUID FORTUNE |
| IMO number: | 9200603 |
| Vessel's previous name(s): | BOW DE SILVER |
| Flag: | MARSHALL ISLANDS |
| Port of Registry: | MAZURO |
| Call sign: | V7LL7 |
| Inmarsat phone number: | |
| Fax number: | |
| Email address: | liquid.fortune@gtships.com |
| | liquidfortune@mail.stratosmobile.net |
| Type of vessel: | Chemical / Oil /Molasses Tanker IMO TYPE II & III |
| Type of hull: | DOUBLE HULL |
| Registered owner - Full Style: | MARIGOLD ENTERPRISES INC |
| Technical operator - Full Style: | ELMIRA SHIPPING & TRADING S.A., 7TH FRAGOKLISSIAS STR, MAROUSI 15125, ATHENS, GREECE TEL: ++30-210-6800929 FAX: ++30-210-6800927/8 TELEX: 220612 ELMI GR E-MAIL: elmira@elmira.gr |
| Commercial operator - Full Style: | ELMIRA SHIPPING & TRADING S.A., 7TH FRAGOKLISSIAS STR, 15125, ATHENS, GREECE TEL: ++30-210-6800929 FAX: ++30-210-6800927/8 TELEX: 220612 ELMI GR E-MAIL: elmira@elmira.gr |
| Disponent owner / Bareboat charterer - Full Style: | N/A |
| Number of vessels in disponent owner's fleet:: | |
| Where Built: | FUKUOKA SHIPBUILDING LTD JAPAN |
| Date Delivered: | 16/02/2000 |
| Vessel's classification society: | NKK |
| Class notation: | NS* (Tanker, Molasses or oil - flash point below 60°C and chemical Type II & III) , (ESP) MNS* |
| If Classification society changed, name of previous society? | NA |
| If Classification society changed, date of change? | NA |

| | | | | |
|---|---|---|---|---|
| Last dry-dock: | | 27 /MARCH /2005 | | |
| Last special survey: | | 27 / MARCH / 2005 | | |
| Latest CAP Rating (if applicable) | | N/A | | |
| Last annual survey: | | 22 / JAN / 2006 | | |
| Does the vessel have a statement of compliance issued under the provisions of the Condition Assessment Scheme (CAS)? | | N/A | | |
| LOA (Length Over All): | | 117 Meters | | |
| Extreme breadth: | | 20 Meters | | |
| KTM (Keel to Masthead): | | 34.5 Meters | | |
| BCM (Bow to Center Manifold): | | 54 Meters | | |
| Lightship parallel body length: | | 25.7 Meters | | |
| Normal ballast parallel body length: | | 44.3 Meters | | |
| Parallel body length at Summer DWT: | | 66.2 Meters | | |
| Net Tonnage: | | 3549 | | |
| Gross Tonnage: | | 6294 | | |
| Suez Net Tonnage: | | 5896.43 | | |
| Panama Net Tonnage: | | | | |
| LOADLINE INFORMATION | Freeboard (Metres) | Draft (Metres) | Deadweight (Tonnes) | Displacement (Tonnes) |
| Summer: | 2.46 Metres | 8.766 Metres | 11747.12 Tonnes | 14881.53 Tonnes |
| Winter: | 2.642 Metres | 8.584 Metres | 11387.85 Tonnes | 14522.26 Tonnes |
| Tropical: | 2.278 Metres | 8.948 Metres | 12108.44 Tonnes | 15242.85 Tonnes |
| Lightship: | 9.070 Metres | 2.150 Metres | 0 Tonnes | 3134.41 Tonnes |
| Normal Ballast Condition: | 6.276 Metres | 4.95 Metres | 4725 Tonnes | 7858 Tonnes |
| TPC on summer draft: | | 19.3 Tonnes | | |
| Does vessel have Multiple SDWT? | | NO | | |
| If yes what is the maximum assigned Deadweight? | | 0 Metric tonnes | | |
| Air draft (sea level to top of mast/highest point) in normal SBT condition? | | 29.55 Meters | | |
| Has vessel been involved in any collision, grounding or pollution incident the past 12 months, full description: | | Pollution: No Grounding: No Collision: No | | |
| Owners warrant following certificates to be valid throughout the Charter Party period: | | YES | | |
| SOLAS Safety Equipment: | | YES - 15th Feb 2010 | | |
| SOLAS Safety Radio: | | YES - 15th Feb 2010 | | |
| SOLAS Safety Construction: | | YES - 15th Feb 2010 | | |
| Load line: | | YES - 15th Feb 2010 | | |
| IOPPC | | YES - 15th Feb 2010 | | |
| Safety Management (ISM): | | YES | | |
| USCG COC: | | N/A | | |
| CLC: | | 20/02/07 | | |
| US COFR: | | N/A | | |

| | |
|---|---|
| Certificate of Fitness (Gas/Chemicals): | YES 15TH FEB 2010 |
| Certificate of Class: | 25 / MARCH / 2010 |
| ISPS ISSC: | TBA |
| Does the vessel have the following documents on board? | |
| International Safety Guide for Oil Tankers & Terminals (ISGOTT): | YES |
| OCIMF/ICS Ship to Ship Transfer Guide (Petroleum): | YES |
| Is the vessel entered with ITOPF? | YES |
| Nationality of Master | PHILIPPINO |
| Nationality of Officers: | PHILIPPINO |
| Nationality of Crew: | PHILIPPINO |
| If Officers/Crew employed by a Manning Agency - Full Style: | ELMIRA SHIPPING PHILS.,INC. PENTHOUSE & UNIT-D 4TH LEVEL, CHINA BANK CENTER BLDG, ACACIA AVE. MADRIGAL BUSINESS PARK, PHASE 2-A ALABANG, MUNTINLUPA CITY PHILIPPINES (PHILCOM) Tel: 00-632-807-7852 / 807 9227 (EDNA) Fax: 00-632-807-4369 Telex: 60002 ELMIRA PN |
| What is the common working language onboard? | ENGLISH |
| Do key officers understand English? | YES |
| In case of Flag Of Convenience (FOC), is the ITF Special Agreement on board? | YES |
| Are cargo tanks coated? | ST.STEEL |
| If Yes, specify type of coating: | |
| If cargo tanks are coated, specify to what extent: | N/A |
| Are slop tanks coated? | ST.STEEL |
| If slop tanks are coated, specify to what extent: | N/A |
| If double hull, is vessel fitted with centreline bulkhead in all cargo tanks? | Yes - SOLID |
| Groups / Tank Capacities = 98 % | 1: 10 cargo tanks with individual segregations 1P= 467.20 / 1S = 467.20 2P= 581.10 / 2S= 580.20 3P= 877.51 / 3S= 873.00 4P= 668.86 / 4S = 667.69 5P= 892.01 / 5S = 887.00 6P= 330.26 / 6S = 334.82 7P= 891.44 / 7S = 887.05 8P= 329.47 / 8S= 334.11 9P= 847.41 / 9S= 842.64 |

| | |
|---|---|
| Total cubic capacity 98% ex slop tank: | 11759.00 cm |
| Slop tank(s) capacity 98%: | 532.44 CBM |
| SBT or CBT? | SBT |
| If SBT, what percentage of SDWT can vessel maintain with SBT only? | 33.33 % |
| If SBT, does vessel meet the requirements of MARPOL Reg 13(2)? | Yes |
| Number of natural segregations with double valve: | SEPARATE LINES & PUMPS TO ALL CARGO TANKS. 20 SEGREGATION POSSIBLE |
| Type / number / capacity: | DEEPWELL HYDRAULIC DRIVEN / 20 PUMPS + 1 PORTABLE PUMP / 8 X 300 Cu.Meters/Hr 6 X 200 Cu.Meters/Hr 6 X 100 Cu.Meters/Hr 1 X 200 Cu.Meters/Hr  SCREW |
| Can tank innage/ullage be read from the CCR? | Yes |
| Can vessel operate under closed conditions in accordance with ISGOTT 7.5.3? | Yes |
| Type of tank gauging system (radar / floating / other) | Floating |
| Are high level alarms fitted and operational in cargo tanks? | Yes |
| **VAPOUR EMISSION CONTROL AND VENTING** | |
| Is a vapour return system fitted? | Yes |
| State what type of venting system is fitted: | CONTROLLED - HIGH VELOCITY |
| Max loading rate per midships connection for homogenous cargo? | 400 cu.m/hr (homogeneous) |
| Does vessel comply with the latest edition of the OCIMF 'Recommendations for Oil Tanker Manifolds and Associated Equipment'? | Yes |
| What is the number of cargo connections per side? | 20 PLUS  COMMON MANIFOLD AT EACH SIDE |
| What is the size of cargo connections? | 12 X 150 plus 8 x 100 Millimetres Plus 1x250 Millimeters the common manifolds |
| What is the material of the manifold? | STAINLESS STEEL SUS 316 L |
| Distance between cargo manifold centres: | 400 Millimetres |
| Distance ships rail to manifold: | 3480 Millimetres |
| Distance main deck to centre of manifold: | 2368 Millimetres |
| Height of manifold connections above the waterline at loaded (Summer Deadweight) condition? | 4.828 Metres |
| Height of manifold connections above the waterline in normal ballast? | 9.584 Metres |
| Is vessel fitted with a stern manifold? | No |
| Number / size reducers: | 4x150/200    6X8 3X150/250    6X10 |

| | |
|---|---|
| | 1X200X250   8X10 |
| | 1X250X300   10X12 |
| Type of cargo heating system? | HEATING COILS BY STEAM |
| Material of heating system? | STAINLESS STEEL  SUS 316L |
| Max load temp: | 80 C |
| Max temp maintain: | 80 C |
| Is an Inert Gas System (IGS) fitted? | NO |
| Is IGS supplied by flue gas, inert gas (IG) generator and/or nitrogen? | NO |
| Is a Crude Oil Washing (COW) installation fitted? | N/A |
| Number / length / diameter / breaking strength of wires: | N/A |
| Focsle: | / Metres / Millimetres / Tonnes |
| Main deck fwd: | / Metres / Millimetres / Tonnes |
| Main deck aft: | / Metres / Millimetres / Tonnes |
| Poop: | / Metres / Millimetres / Tonnes |
| Number / length / diameter / breaking strength of ropes: | On Drums |
| | BREAKING STRENGH : 28T |
| Focsle: | 4 x 200 x 60 |
| Main deck fwd: | NIL |
| Main deck aft: | NIL |
| Poop: | 4 x 200 x 60 |
| | Other Lines |
| Focsle: | 4 x 200 x 60 |
| Main deck fwd: | NIL |
| Main deck aft: | NIL |
| Poop: | 4 x 200 x 60 |
| Number and brake holding power of winches: | |
| Focsle: | 2 / 22.5 Tonnes |
| Main deck fwd: | N/A |
| Main deck aft: | N/A |
| Poop: | 2 / 22.5 Tonnes |
| How many closed chocks and/or fairleads of enclosed type are fitted on: | |
| Focsle: | 1 PCS |
| Main deck fwd: | 2 PCS |
| Main deck aft: | 2 PCS |
| Poop: | 3 PCS |
| Fairlead size: | 24 X 15 CM |
| Does vessel comply with the latest edition of OCIMF 'Recommendations for Equipment Employed in the Mooring of Vessels at Single Point Moorings (SPM)? | N/A |
| Is vessel fitted with chain stopper(s)? | N/A |
| Number: | |
| Type: | |
| SWL: | Tonnes |

| | |
|---|---|
| Max diameter chain size: | Millimetres |
| Derrick(s) – Number / SWL: | N/A |
| Crane(s) – Number / SWL: | 1 CRANE 5T X 12M |
| What type of fuel is used for main propulsion? | IFO 180CST |
| What type of fuel is used in the generating plant? | MGO |
| P & I Club name: | UK PANDI CLUB |
| Last three cargoes (Last / 2nd Last / 3rd Last): | Luboils & Chemicals various grades |
| Last three charterers (Last / 2nd Last / 3rd Last): | Luboils & chemicals various grades |
| Last three voyages (Last / 2nd Last / 3rd Last): | |
| Date of last SIRE Inspection: | N/A |
| Date of last CDI Inspection: | N/A |
| Current Oil Major Company Acceptances (TBOOK): | N/A – NEW OWNERS |
| Date and place of last Port State Control: | |
| Any outstanding deficiencies as reported by any Port State Control? | NO |
| If yes, provide details: | N/A |
| FOR USA CALLS ONLY | |
| Qualified individual (QI) – Full Style: | |
| Oil Spill Response Organization (OSRO) –Full Style: | |
| Has owner, manager, or operator signed the Sea Carrier Initiative agreement with US customs concerning drug smuggling? | |

EXHIBIT 2

ELMIRA - DJS
TRADHOL - JA

PLSD TO RECAP FOLLOWING CLEAN FIXTURE WITH ALL SUBJS IN ORDER
CP DTD TODAY 19, NOV 2007

M/T LIQUID FORTUNE/2000 BLT
DWT 11,747 ON 8.76M SUMMER DRAFT IMO TYPE 2 (DOUBLE HULL) STAINLESS
STEEL
TANKS/11,751 M3 (98%) + SLOP TANKS 539 M3 (98%) ADA/WOG

q88 as attached -

last 3 cargoes:

Tanks / C A R G O E S
-----------------------------------

3rd last/2nd last/1st last

1p YK-D80/sulfuric acid/sulfuric acid/
1s YK-D80/sulfuric acid/sulfuric acid/

2p Palm oil/PRO/Butyl Acrylate/
2s Palm oil/PRO/Butyl Acrylate/

3p RPO/ISO Butyl/sulfuric acid/
3s RPO/Butyl Alcohol/sulfuric acid

4p RPO/KOCOSOL 150/sulfuric acid/
4s RPO/KOCOSOL 150/sulfuric acid/

5p CAUSTIC SODA/Crude Palm Oil/sulfuric acid/
5s CAUSTIC SODA/Crude Palm Oil/sulfuric acid/

6p Crude Palm Oil/sulfuric acid/sulfuric acid
6s Crude Palm Oil/sulfuric acid/sulfuric acid/

7p Crude Palm Oil/sulfuric acid/sulfuric acid/
7s Crude Palm Oil/sulfuric acid/sulfuric acid/

8p Palm oil cpo/RPO/Crude Palm Oil/
8s PALM OIL PKFAD/RPO/Crude Palm Oil/

9p DOP/sulfuric acid/sulfuric acid/
9s DOP/sulfuric acid/sulfuric acid/

10p PALM OIL RPS/RPO/Crude Palm Oil/
10s PALM OIL RPS/RPO/Crude Palm Oil/

for

- Acc Tradhol of Spain
- Part Cgo 3,500 mts minmax 1 grade ethanol sg .79
seg / completion rotation in owners option awvns
- load port 1sp/1sb upriver plate pamsa, dock sud sitef 23' fw
- D/ports 1sp/1sb ara to be declared 2 days after sailing lp
- Freight US$81 pmt 1/1
- Laycan 20th 10:00 AM lcl time/25th Nov 2007
- Freight is payable 100% 7 banking days upon completion of loading operations and s/r b(s)/l marked 'freight payable as per c/p' but always bbb
- Laytime 150 shinc/150 mtph shinc
- Demurrage : Usd 11,000 pdpr
- sub asbatankvoy cp
- General average/Arbitration in London with English Law to apply
- York/Antwep Rules 1974 as amended 1990 to be applied
- Vsl is free of any extra insurance
- Any taxes and or dues on cargo and or freight to be for chrts acct bends
- 2.5% tll doric on frt/dedfrt/dem

Owners accept Tradhol terms revision july 2007 Logically ammended as per

main terms and foll owners terms to apply as below.

1. ok
2. ok
3. ok
4. ok
5. delete last line
6. owners agents at bends
7. ammend as per main terms
8. delete 'and shifting' and add at the end 'provided no cargo operations being performed.'
9. ok but see clarification on owners terms
10.1. replace '08.00' to '06.00'
10.2. replace '08.00' to '06.00'
10.3 ok
10.4 ok
11.1 ok
11.2 delete
12. delete 'even if lightering has taken place at the anchorage'
13. delete 'and advise one.... a demmurage claim.'
14. ok
15. delete last line
16. replace 'owners' with 'charts' (please see per main terms)
17. as per charts EXCEPT ammend line 2 To read '1 ppm chlorides'
18. delete and replace with 'Voywar 2004'
19. replace 'minimum' with 'average'
20. ok

21. delete
22.1.1 delete 10/5/72/48'
22.1.2 ok
22.1.3. ok
22.2.4. delete
22.2.1 ok
22.2.2 ok
22.2.3 ok
22.2.4 delete
23. ok
24. delete and insert 'Last 3 cargoes as given by owners are a confirmed
as suitable to charts/rcvrs' for their cargo.'
25. ok
26. ok but add at the end 'Cost of od same if any to be for charts account.'
27. ok
28. delete
29.1 ok
29.2 ok
30. delete last line
31. ok
32. ok
33. ok
34. - delete and replace with Bimco ISPS clause

FLW OWNERS ADDITIONAL CLAUSES TO BE INCORPORATED IN THIS C/P Owners
additional clauses when used as part of any charter party, is any
inconsistency between these owners voyage charter terms and any other
term whatsoever of the contract of which they form part, take precedence
over such other term to the exclusion of that other term or inconsistent
part thereof.


1. samples
Charterer to place their cargo(s) samples on board vessel upon
completion of load. Owner to deliver samples to Charterer's
Representative/Surveyor at Discharge. In both cases, vessel to obtain a
signed receipt for samples.


2. frt assignment
Charterer will not agree to the assignment of freight or monies due
under this Charter party, or the Charter party itself, in any
circumstances whatsoever.


3. bs/l
If required, bills of lading to be marked clean on board & same to be
signed by owners accordingly. Clean in this context refers to the
condition of the documentation; i.e a clean bill of lading without

clauses or blemishes or exceptions upon it. Clean in this context does

not refer to the quality, quantity or the condition of the commodity.

4. dispute
In case of dispute charterers to pay in full within 30 days the undisputed amount. The disputed amount to be settled amicably and ultimately in arbitration.

5.Bimco Double Banking Clause to Apply

6.Bimco Standard ISPS Clause for Voyage Charter Parties to apply

7. shifting
If charterers choose to shift the vessel to other berth(s) at the same
port shifting charges to be for charterer's account and time to count as
laytime bends. Vessels to be left in seaworthy trim for all passage between berths.

8. following clauses to be incorporated in the B/L's and apply to this charetr party

New Jason Clause
Both to Blame Collision Clause
p&i bunker deviation clause to apply

9. blending/comingling clause
Should the shipment loaded on board the vessel be part of one original
lot and be stowed in no segregation as to parcels for the whole shipment

with several sets of bill(s) of lading have been issued, then the vessel
is to be relieved from all responsibilities to the extent it would be if
only one set would have been issued. The vessel undertakes to deliver only that portion of the cargo actually loaded, which is represented by
the percentage that the total amount specified in the bill(s) of lading
and bears to the total of the commingling shipment delivered at . destination.

Charterers shall have the option to order the vessel to blend and/or circulate and/or transfer cargo on board the vessel, provided that such
blending and/or circulating and/or transfering is within the technical

capacity of the vessel and that owners/master consider it safe to do
so.

Should charterers decide to blend products from the same or different
ports onboard nominated tanks for which the eventual product (whether
renamed or not) and loadport shall be renamed, charterers/shippers to
provide specific instruction to Master and provide their surveyors to
supervise the said blending. Such operation shall be carried out at
Charterer's risk/cost/time and Charterers to be held responsible for
all
consequences howsoever associated with this operation.

Owners shall not be responsible for the quality of the cargo and/or
its
loss and/or its damage arising out of the final product/admixture.
Charterers to provide a letter of indemnity without bank guarantee
(as
per Owners P & I Club wording) to Owners for such blending
operations,
renaming product name in the eventual Bills of Lading as per
Charterer's
instructions.

## 10. COMPLETION - ROTATION - SEGREGATION
If cargo carried under this Charter is less than the Vessel's full
deadweight
capacity (part cargo), the Owner has the option of loading other
cargo(es)
either before or after loading cargo under this Charter at same or
other
port
(s) for discharge at same or other port(s) for own or other account.
Rotation
between loading ports and berths, and between discharging ports and
berths
shall be at Owner's option. The Owner undertakes to keep part cargo
completely
segregated from other cargo on board the Vessel.

## 11. LAYTIME AND DEMURRAGE
(a) Berthing delays.
If more than one cargo is to be loaded or discharged at the same
berth, any
time lost in berthing (until all fast at berth, finished mooring at a
sea
buoy
or anchored at designated place for loading/discharging) shall be
prorated
on
the basis of cargo quantities to be loaded and/or discharged at the
same

berth,
provided that a cargo shall not participate in any pro rating of time
lost
before a notice of readiness has been tendered therefore, and further
provided
that if the cause of a particular delay is attributable to the
Charterer or
its
cargo, time to count in full.

(b) Weather.
Delays after the Vessel has tendered notice of readiness at loading
and
discharge ports due to weather conditions shall count as laytime or
when
laytime has expired as time on demurrage, but demurrage if payable
shall be
paid for at one half of the agreed rate for a period equal to such
period
from
the commencement of delay to the Vessel until cessation of said
weather
conditions, otherwise the full demurrage rate shall apply.

12. HOSES.
Hoses for loading and discharging shall be furnished by the Charterer
and
shall
be connected and disconnected by the Charterer at its risk and
expense.
Laytime
shall continue until hoses used for Charterer's purposes have been
disconnected
at the last berth used by the Charterer at each load and discharge
port or
place. The Charterer shall be granted 2 hours after disconnection of
hoses
to
procure all documentation and other matters to enable the vessel to
proceed,
after which all time lost to the vessel by reason of Charterer's
failures,
including awaiting tugs, pilots, daylight or due to local regulations
until
such time as the vessel proceeds shall be paid for by the Charterer
at the
demurrage rate.

12. DUES - TAXES - WHARFAGE
(a) The Owner shall pay and be responsible for:
(i) entrance and clearance fees whether measured by the volume or

weight of
the
cargo or not, towing and tug charges, pilotage, dues and other port
charges
on
the Vessel,
(ii) charges for any berth (whether procured by the Charterer or not)
when
used
solely for Owner's or Vessel's purposes such as awaiting Owner's
orders,
tank
cleaning, repairs before, during or after loading or discharge.
(b) The Charterer shall pay all taxes, dues, fees and any other
charges of
any
nature regardless of how calculated or defined:
(i) on the cargo, including but not limited to Customs overtime on
the
cargo,
all Brazilian taxes or dues, including those on freight, Brazilian
Port
Utilization Taxes, any Port Infra-Estrutura Taxes or similar taxes,
Merchant
Marine Renewal Taxes and Consular Fee, Venezuelan Habitation Taxes,
C.I.M.
Taxes at Le Havre, Portuguese Importo de Commercio Maritime, Saudi
Arabian
Zakat taxes and any similar taxes,
(ii) on freight at the loading and discharging ports, and any unusual
taxes,
assessments or governmental charges which arise because cargo is
carried in
or
to or from any port and/or loaded or discharged at any berth,
(iii) wharfage, dockage, quay dues or similar from which the Vessel
shall be
free for loading or discharging the cargo,
(iv) any other charge of whatever nature not expressly payable by the
Owner
under (a) above whether the same be present in effect or which may be
imposed
in the future on the cargo, Vessel or freight.

13. MARPOL
(a) If mandatory wash or prewash of cargo tanks (Wash) in accordance
with
requirements of MARPOL 73/78 Annex II is required, the same shall be
performed
in direct continuation upon completion of discharging cargo in
conformity

with
the Vessel's "procedures and arrangements manual" and in accordance with the
local port regulations. Any time used or delays incurred for such Wash shall
be
for the Charterer's account and count as laytime or when laytime has expired
as
time on demurrage.

(b) The Charterer shall provide suitable and adequate facilities, which
shall
be immediately available and accessible to the Vessel upon completion of
discharge for the reception of such mixture of washing water/cargo residues
originating from cargo carried under this Charter and respective Bills of
Lading. The cost of such facilities and responsibility for ultimate disposal
of
any such mixture originating from Charterer's cargo shall be for Charterer's
sole account.

(c) In the event that the Vessel is required to vacate the discharging berth
to
perform tank washing and/or Wash, as provided above, any shifting expense
and
additional bunker cost shall be for the Charterer's account. Time used
hereby
shall count as used laytime, or if the Vessel is on demurrage, as time on
demurrage. Any delay in providing the necessary reception facilities and
time
used for discharging cargo residue mixture shall count as laytime, or if the
Vessel is on demurrage, as time on demurrage.

(d) In cases where the Owner has the option to transship or barge the cargo,
the Charterer's obligation to receive and ultimately dispose of the residue
mixture remains as stipulated in this clause.

. (e) Any action or lack of action taken under this clause shall not prejudice

any other rights or obligations of the parties.

## 14. ARBITRATION

This Charter shall be governed by and construed in accordance with the law

of

the place as agreed in the fixture recap. If no express agreement is made

however, English law and arbitration in London shall apply. Any dispute

arising

out of or in connection with this Charter or cargo carried hereunder shall

be

referred to arbitration in accordance with the arbitral law then in force or

any statutory modification or re-enactment thereof save to the extent necessary

to give effect to the provisions of this Clause.

The reference shall be to 3 arbitrators, one to be appointed by each party

and

the third by the two so appointed. Arbitration shall commence when one party

notifies the other in writing of its appointment of an arbitrator. If the

party

receiving notice does not appoint its own arbitrator within 14 calendar days

of

the date of such notice and give notice thereof to the first party, then the

first party's arbitrator shall serve as sole arbitrator whose award shall be

binding on both parties.

In cases where neither the claim nor any counterclaim exceeds the sum stated

in

the LMAA Small claims Procedure, or in the SMA if US law and arbitration in

New

York is agreed, as the case may be current at the time when the arbitration

proceedings are commenced, the arbitration shall be conducted in accordance

with the applicable small claims procedure.

15.

CONOCO WEATHER CLAUSE TO APPLY BUT IF LOADING/DISCHARGING NORTH

SPAIN,

PORTUGAL ,LEBANON, LA NOUVELLE, SANTA PANAGIA BAY, FIUMICINO, ANCONA,

RAVENNA,

FALCONARA, SYRIA, SBM, SPM, SHIP TO SHIP, SEALINE, OPEN SEABERTH,
ANCHORAGE,

LIGHTERAGE/LIGHTENING OPERATIONS ANY DELAYS DUE TO WEATHER AND OR SEA
CONDITIONS TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF VSL ON
DEMURRAGE AND

ANY

UNBERTHING/REBERTHING DUE TO WEATHER /SEA CONDITIONS TIME TO COUNT IN
FULL

AS

LAYTIME OR DEMURRAGE IF VSL ON DEMURRAGE AND ALL COSTS TO BE FOR
CHARTERERS

ACCOUNT WHICH TO BE PAID AGAINST OWNERS INVOICE SUPPORTED BY HARD
COPY

DOCUMENTS.


16.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONTRACT,
THE OWNER SHALL HAVE THE RIGHT TO NOMINATE ANOTHER COMPANY
DIRECTLY OR INDIRECTLY OWNED OR CONTROLLED IN WHOLE OR IN
PART BY THE OWNER OR ITS ULTIMATE HOLDING COMPANY TO PERFORM
ITS OBLIGATIONS HERUNDER, AND AT ANY TIME SUBSTITUTE ANY
VESSEL FOR ANOTHER FOR THE PERFORMANCE OF ALL OR PART OF
THIS CONTRACT, WHICH SUBSTITUTE VESSEL MAY BE OWNED OR
CHARTERERED IN BY THE OWNER. OWNER SHALL ALWAYS REMAIN
RESPONSIBLE FOR THE FULFILMENT OF THIS CHARTER IN ALL ITS
TERMS AND CONDITIONS.

ends

UNQUOTE

Please acknowledge receipt of the documentation.

Best regards
Zefi Gritza



[Message sent via SOFTWAY Communication Program]

This email has been scanned for all viruses by the Mimecast Email Security
System. For more information please visit http://www.mimecast.com

"q88_-_liquid_fortune 14.doc" deleted by Cedric Chatteleyn/Thomas Miller]           [attachment
[attachment "20071217175316 1.pdf" deleted by Cedric Chatteleyn/Thomas

EXHIBIT 3



revised                3/4/2008

TRADHOL OF SPAIN

## "M.T. Liquid Fortune" / TRADHOL cp dd 19/11/07"

### INVOICE

|  | USD (debit) | USD (credit) |
|---|---|---|
| DEMURRAGE, for settlement purposes |  | 21.338,59 |
| Berthing dues (load port) |  | 664,31 |
| Harbour Berthing dues (discharge port) |  | 770,17 |
| Total in Owners' favour | 0,00 | 22.773,07 |
|  | 22.773,07 |  |
|  | 22.773,07 | 22.773,07 |

*E & O.E.*

| Bank | ROYAL BANK OF SCOTLAND PLC. |
|---|---|
| Branch | PIRAEUS BRANCH |
|  | PO BOX 80177, AKTI MIAOULI 45 |
|  | GR 185 10 PIRAEUS |
|  | GREECE |

| Account No. | 195203-100 |
|---|---|
| Swift ID | RBOSGRAA |
| Beneficiary: | *ELMIRA SHIPPING AND TRADING S.A.* |
| Reference : | M/T LIQUID FORTUNE / ACC TRADHOL CP DD 19/11/07 |

US Correspondent:

JPMORGAN CHASE BANK NEW YORK
NEW YORK
USA
SWIFT ID:CHASUS33

EXHIBIT 4

TANKERS@DORIC.GR

From: ELMIRA Shipping & Trading S A - As Agents to the Owners
Tel:+30 210 6800929 Fax:+30 210 6800927/8 Tlx: 220612, 220613 ELMI GR
Comtext & Mail: A44GR863 Internet E-Mail:operations@elmira.gr
Ref:  36320 PS 12 May 2008

TO : DORIC TANKERS
ATT: KOSTAS

URGENT

RE : M/T LIQUID FORTUNE / ACC TRADHOL

Reference is made to Chrrs last msg dd 22/4/08 which for easy
reference is quoted herewith.

Credit of time as requested has been granted however no funds
received.

Regret but since this agreed / undisputed demurrage due to Owners
is long overdue, Chrrs should arrange remittance latest by the
end of this week otherwise Owners will be obliged to pass the
file to their legal dept, as per previous advice, without further
notice to Chrrs.

Pls be guided accordingly.

Rgds
Patroula

++
From: "Doric Shipbrokers S.A." <tankers@doric.gr>
To: operations@elmira.gr
Subject: LgINT Message (REF:0856FBC00)
CC: <No CC specified>
Date: Tue, 22 Apr 2008 17:54:44 +0300

TELiX MSG: 56FBC-00 22/04/08 17:54

ATT: OPS

FOLL RCVD FROM TRADHOL...

Hi Kostas,

We had scheduled to pay below from funds coming from our loadings at
Karachi, that are now postponed as u know.

We need a few weeks more, take it for granted we are not running away..

Rgds

Enviado el: martes, 22 de abril de 2008 15:37
Para: undisclosed-recipients:
CC: houmail@doricusa.com
Asunto: LgINT Message (REF:0856E81 )
Importancia: Alta

TELiX MSG: 56E81 22/04/08 16:37


ATT: OPS

FROM OWNERS

QTE

RE : M/T LIQUID FORTUNE / ACC TRADHOL

Further to Chrrs confirmation of payment dd 8/4/08, respective
msg is quoted herewith for easy reference, regret but funds
did not reach Owners bank a/c .

If Owners do not receive agreed funds latest by tomorrow 23/4/08,
they will be obliged to pass the file to their legal dept for
further handling.

All Owners rights under the t/c are hereby reserved.

Rgds
Patroula



+++

From: "Doric Shipbrokers S.A." <tankers@doric.gr>
To: operations@elmira.gr
Subject: LgINT Message (REF:084B47C00)
CC: <No CC specified>
Date: Tue, 08 Apr 2008 11:32:41 +0300

TELiX MSG: 4B47C-00 08/04/08 11:32


ATT: OPS

FROM CHARRS

QTE

RE : M/T LIQUID FORTUNE / ACC TRADHOL

Dear Sirs,

We confirm that we have passing invoice to our finance department for
payment end of the next week. We will keep you informed with swift of
payment.

Best regards,
Antonio J. Molina


-----Mensaje original-----

... ........................com
Asunto: LgINT Message (REF:08483DA )
Importancia: Alta

TELIX MSG: 483DA 03/04/08 13:44


ATT: OPS

FROM OWNERS

QTE

═══════════════════
Without Prejudice
═══════════════════

RE : M/T LIQUID FORTUNE / ACC TRADHOL
════════════════════════════════════

Reference is made to Chrrs today msg re unsettled demurrage.

Noticed that Chrrs agreed with Owners' msg point a+b at loadport
however they have not adjusted the laytime calculation accordingly
since they should amend time at loadport to count fm all fast at
berth 24/11, 14:00 hrs till sailing 25/11/07, 15:12 hrs thus making
a total of 25 hrs 12 min used instead of 22 hrs 38 min.

Since Chrrs have accepted , relevant amendment must be made.

Ref disport, in order to settle accounts practically and receive
balance due "promptly" , Owners accept.

Thus basis amendments that Chrrs should make at loadport, as per
their agreement to Owners supported comments, attached herewith
pls find revised invoice .

As indicated revision has been made on the basis of a prompt payment
that should be executed during the course of next week.

To this respect Chrrs swift payment is anticipated.

Tks in advance.

Rgds
Patroula

UNQTE

BRGDS


(Message sent via SOFTWAY Communication Program)


[Message sent via SOFTWAY Communication Pr....



Patroula Syriopoulou <p.syriopoulou@elmira.com.gr>

## M/T LIQUID FORTUNE / ACC TRADHOL

Elmira Operations <operations@elmira.gr>
To: tankers@doric.gr
Cc: softway@elmira.gr, operations@elmira.gr

Tue, May 20, 2008 at 12:25 PM

TO : DORIC TANKERS
ATT: KOSTAS

RE : M/T LIQUID FORTUNE / ACC TRADHOL

Further to Owners last notice dd 12/5/08-ref:36320/PS, since time granted for payment has elapsed and no funds received, pursuant to the respective msg Owners are forwarding today the file to their legal dept for further handling.

Pls be guided accordingly.

Rgds
Patroula

tanken@doric.gr
Att Mr. Kostan Paulaton.

EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
MARIGOLD ENTERPRISES, INC.,                      :
                                                 :
                    Plaintiff,                   :          08 Civ.
                                                 :
        - against -                              :          ECF CASE
                                                 :
TRADHOL INTERNACIONAL S.A.                       :
                                                 :
                    Defendant.                   :
------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )        ss: Town of Southport
County of Fairfield   )

        Anne C. LeVasseur, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, TRADHOL INTERNACIONAL S.A.

within this District. As part of my investigation to locate the Defendant within this District, I

checked the telephone company information directory, as well as the white and yellow pages for

New York listed on the Internet or World Wide Web, and did not find any listing for the

Defendant. Finally, I checked the New York State Department of Corporations' online database

which showed no listings or registration for the Defendants.

3.    I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.    This is Plaintiff's first request for this relief made to any Court.

# PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R .Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

2

8. To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9. Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10. Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

3

Dated: June 9, 2008
        Southport, CT

Anne C. LeVasseur

Sworn and subscribed to before me
this 9 day of June, 2008.

Notary Public/ Commissioner of
Superior Court

4